José Antonio Vázquez, etc., Plaintiff and Appellee, *v.* José de Jesús, Defendant and Appellant.

No. 9161. Argued December 26, 1945.—Decided March 29, 1946.

*José A. Varona Pacheco* for appellant. *V. M. Sánchez Fernández* for appellee.

Mr. Justice Córdova delivered the opinion of the court.

From a judgment declaring the plaintiff minor a natural child of the defendant and adjudging the latter to pay to the former a monthly allowance of $12.50 for his support, the defendant appeals.

The appellant maintains that the court erred in denying his motion to quash the service of summons. There was

no error, since the appellant filed his answer to the complaint jointly with his motion attacking the service, thereby waiving any defect in the latter.[1]

■■ The appellant further maintains that the lower court erred in considering the evidence sufficient to establish the filiation and in according credit to the evidence for the plaintiff on this particular.

The witnesses for the plaintiff were his mother, his maternal grandmother, and an aunt of his mother.

. The mother testified that she met the defendant, a peddler, at Stop 15 in Santurce; that sometime after she met him she had sexual intercourse with him, on June 26, 1943, and that thereafter the defendant came daily, for a period of five months, to the house where she worked, and stayed there: "he came, slept with me, and afterwards went away wherever he liked;" that she became pregnant and he took her to her mother's house—where she had taken him once, at the beginning of their relations, for a visit—left her there, and never returned, nor had anything to do with the child when it was born on March 19, 1944, although they had sent word to him several times. The defendant never went to visit the child, but "he has seen it and has taken it in his arms and has gone to the house of a friend of mine to see it"; and he gave money to the witness on three occasions, $5 on June 5, 1944, $5 on June 20, and $3 in September 1944, for the support of the child.

The maternal grandmother corroborated the testimony of the mother in regard to the two visits which the defendant made to the house of the former accompanied by the latter: the first on June 24, 1943, and the second five months after the mother became pregnant, when he left her there. The witness stated that the defendant never returned to her house "and I did not see him again," although she went to Santurce to

---

[1] Rule 12 *b* of the Rules of Civil Procedure does not apply, since this is a proceeding for maintenance and support which is not governed by the Rules. (See Rule 81)

look for him: "I tried to find him to talk with him and I did not see him." But she added that after the child was born, "forty days afterward, I took the child to him," without stating what happened on that occasion. Upon being asked whether she saw the defendant again after his second visit to her house, she answered: "No, sir, I looked for him and I did not see him."

The maternal aunt knew that the defendant and plaintiff's mother "had friendly relations" because the witness worked in the house next to the one where the mother worked; that this friendship lasted five months; and that during that time the defendant came every evening to the house where plaintiff's mother worked, waiting for her at the gate, and that they went out together every night, without the witness knowing where they went: "At 7 o'clock sharp he waited for her at the gate of the house. . . I saw them go out through the gate." She stated that afterwards the defendant paid no attention to the mother; that he did not give her any aid at childbirth, and that "he has never given her anything, or seen the child."

The three witnesses for the plaintiff admitted that plaintiff's mother has another child born out of the relations she had with another man prior to her relations with the defendant.

The defendant admitted that one evening he met plaintiff's mother at Stop 15 in Santurce, and had sexual intercourse with her on that occasion but denied that he had even seen her afterwards. He stated that he learned of the pregnancy and "of this matter" when he received a letter from a Bayamón attorney.

The lower court, after making a brief summary of the testimony of each witness, confined itself to stating that "it has reached the conclusion that the child born out of that concubinage is really defendant's child"; and on the basis of that conclusion, it declared the plaintiff an acknowledged

natural child of the defendant and adjudged the latter to pay a support allowance.

Granting full credit to the evidence for the plaintiff, as the lower court apparently did, the fact is that this evidence failed to establish that the mother of the plaintiff lived in concubinage with the defendant. According to her own description of her relations with the defendant, the latter came to the service quarters in the house where she worked, had sexual intercourse with her, and then "went away wherever he liked." We have already decided that relations of this sort are very far from constituting concubinage, which essentially comprises the relationship between a man and a woman who cohabit together as spouses without being such. *Colón* v. *Heirs of Tristani*, 44 P.R.R. 163, 45 P.R.R. 219; *Gerena* v. *Suau*, 36 P.R.R. 151.

The error of the lower court in holding that plaintiff's mother lived in concubinage with the defendant carries with it a reversal of the judgment, since there is no proof of any of the elements which, according to § 125 of the Civil Code (1930 ed.), are necessary to establish natural paternity. See *Ortiz* v. *Dragoni*, 59 P.R.R. 14. As we said in *Colón* v. *Heirs of Tristani*, *supra*, at p. 231:

"The evidence should not be limited or confined to a discovery of who was the progenitor. This is only an element of proof which should be taken into consideration in conjunction with other acts, in order to establish the status of a natural child. We have not considered the relations of a man and his mistress equivalent to a concubinage. If this had been so, we would have based our judgment simply on the finding of the court below to the effect that Josefa Colón was the mistress of Alberto J. Tristani, without any need of argument. It would have sufficed to state that once the relation, which the court *a quo* considered to have been proved, was established, the status of Alberto Colón as a natural child was also established. On the contrary, we said, and we think we

did so with all clearness, that this evidence, corroborated and strengthened by other acts of the father, may be sufficient to obtain and enter a decree of filiation.''

In the above-cited case there was evidence of various acts of the father which showed that he regarded the child as his own, that is, that the latter had the status of a natural child. What was held in *Colón* v. *Heirs of Tristani, supra*, was that, where there is evidence of paternity, the possession of the status of a natural child may be established through evidence of isolated acts, which otherwise would not. be sufficient for that purpose.

In the case at bar it was not shown that the defendant at any time regarded or considered the plaintiff as his child. It is true that the mother testified that on three occasions the defendant sent her money for the support of the plaintiff; but the other two witnesses for the plaintiff stated that the defendant had never looked after the plaintiff or helped him in any way. Plaintiff's own evidence, therefore, establishes that the defendant has never considered the plaintiff as his child. The lower court apparently so concluded, since it based its judgment exclusively on the existence of concubinage.

The judgment appealed from should be reversed and another rendered instead in favor of the defendant.